UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-22257-CIV-SEITZ/O'SULLIVAN

DAVID SUGARMAN,
    Plaintiff,

v.

DEUTSCHE BANK SECURITIES, INC.,
    Defendant.
_____/

## ORDER GRANTING MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

THIS MATTER came before the Court on Defendant's Motion for Partial Judgment on the Pleadings [DE 10]. Plaintiff, David Sugarman, alleges his former employer, Defendant, Deutsche Bank Securities Inc. ("Deutsche Bank"), violated the Florida Civil Rights Act ("FCRA"), Fla. Stat. §§ 7601.01 *et seq.*, because Deutsche Bank subjected him to a religiously hostile work environment (Count I) and terminated him when he reported the alleged discrimination to the Human Resources Department (Count II).[1] Deutsche Bank moves for judgment on the pleadings as to Count I of the complaint arguing that Mr. Sugarman's factual allegations, even if taken as true for the purpose of this motion, fail as a matter of law to establish he experienced "severe or pervasive" religious harassment. For the reasons set forth below, the Court finds that Mr. Sugarman's factual allegations are insufficient to establish a claim for a religiously hostile work environment, and, accordingly, the Court will enter judgment as to Count I of the complaint for the Defendant.

I.    **DISCUSSION**

    A.    *Standard for Judgment on the Pleadings*

A Rule 12(c) motion for judgment on the pleadings challenges the legal sufficiency of the allegations made in the complaint and is analyzed according to the Rule 12(b)(6) standard. *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002). "While a complaint attacked by a Rule 12[(c)] motion does not need detailed factual allegations, [it] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

---

[1] Mr. Sugarman filed this case in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida. Deutsche Bank removed this action on the basis of diversity jurisdiction pursuant to 28 U.S.C. ¶ 1332. [*See* DE 1].

*v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*quoting Twombly*, 550 U.S. at 570). If the complaint's factual allegations are insufficient to state a claim, judgment on the pleadings is proper. *See Hawthorne v. Mac Adjust., Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

### B. Mr. Sugarman's Allegations of Harassment

Mr. Sugarman claims that during the last eleven months of his employment at Deutsche Bank,[2] he was subjected to a hostile work environment because "Defendant, its owners, employees and/or agents repeatedly subjected Plaintiff to offensive, discriminatory, and/or other conduct based on Mr. Sugarman's Jewish religion." [DE 1 ¶ 10 "Compl."]. He alleges the following facts to support his claim:

- In November 2007, Mr. Sugarman's supervisor "stated, in the presence of other company employees, that Plaintiff would not be allowed to attend the company holiday party because they were 'not letting Jews in'" [Compl. ¶ 11];
- A few weeks after the first incident, in December 2007, at a company orientation, a manager told Mr. Sugarman "watch how I fuck you" and then placed Mr. Sugarman at a separate table [Compl. ¶ 12];
- On October 9, 2008, the day before the Jewish holiday Yom Kippur, Mr. Sugarman's supervisor commented that he was Jewish himself and was also going to take time off for Yom Kippur, although his supervisor is not actually Jewish [Compl. ¶ 13];
- Mr. Sugarman's supervisor and other employees often referred to Mr. Sugarman as "'you people.'" Mr. Sugarman understood this to mean "you Jewish people." [Compl. ¶ 14].

As to each incident, Mr. Sugarman claims he "was deeply offended by the comment and perceived it as one which was anti-Semitic and hostile towards [hi]s religious beliefs." [Compl. ¶¶ 11-14]. Although Mr. Sugarman states that the facts above are "examples of some of the offensive and discriminatory conduct" [DE 16 at 3], he does not raise any additional incidents in his response to Defendant's motion.[3] Since Mr. Sugarman maintains that his complaint "gives Deutsche Bank 'fair notice' of what Mr. Sugarman's claim are [*sic*]," [DE 16 at 3], the Court accepts that Mr. Sugarman stated all pertinent facts in his pleadings.

### C. Hostile Work Environment

The FCRA proscribes certain employment practices that discriminate against an individual with respect

---

[2] Mr. Sugarman was employed by Deutsche Bank from September 12, 2006 until October 16, 2008. [DE 2 ¶ 4].

[3] The deadline to amend pleadings was December 9, 2009, two days before Mr. Sugarman filed his response. Mr. Sugarman, who is represented by counsel, was on notice that his factual allegations were inadequate but chose neither to add allegations of harassment in his response or move to amend his pleadings. Furthermore, since Mr. Sugarman knows what conduct offended him, additional discovery is unnecessary. Therefore, the court accepts that this is the universe of facts.

to the terms, conditions, or privileges of employment based on race, color, religion, sex, national origin, age, handicap, or marital status.[4] Fla. Stat. § 760.10(1)(a). Since an employee's work environment is a term or condition of employment, the FCRA prohibits a hostile work environment. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 313 (4th Cir. 2008) (analyzing religiously hostile work environment under Title VII).

A hostile work environment exists only when the workplace is so "permeated with 'discriminatory intimidation, ridicule, and insult,' that it is 'sufficiently severe or pervasive to alter the [terms or] conditions'" of employment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted). The elements of a hostile work environment religious discrimination claim are that: (1) the employee belongs to a protected group; (2) the employee has been subjected to unwelcome harassment; (3) the harassment was based upon the employee's religion; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) there is a basis for holding the employer liable.[5] *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999). For the purposes of its motion, Deutsche Bank concedes that Mr. Sugarman satisfied all but the fourth element of his claim.[6]

D. *Analysis*

Therefore, the issue is whether the allegations in the pleadings are sufficient to satisfy the fourth element of a hostile work environment claim; *i.e.*, whether the harassment alleged was sufficiently "severe or pervasive." *Id.* at 1245. To make this determination, courts look at the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Harris*, 510 U.S. at

---

[4]The FCRA is patterned after Title VII, and therefore, Title VII case law is persuasive authority for the interpretation of the FCRA. *Jones v. United Space Alliance, L.L.C.*, 170 Fed.Appx. 52 (11th Cir. 2006) (hostile work environment based on religious discrimination); *Maldonado v. Publix Supermarkets*, 939 So.2d 290 (Fla. 4th DCA 2006).

[5]Mr. Sugarman asserts he is not required to plead a *prima facie* case of discrimination. [DE 16 at 3 (*citing Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002))]. Nevertheless, Mr. Sugarman still must allege facts sufficient to support all of the elements of his claim. *See Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1270-71 (11th Cir. 2004) (*Swierkowicz* "did not even remotely suggest that a pleading could survive dismissal when it consisted of only the barest of conclusory allegation without notice of the factual grounds on which they purport to be based").

[6]Namely, that Mr. Sugarman is a member of a protected group, in that he is Jewish, he was subjected to unwelcome conduct based upon his religion, and his supervisor was involved in the unwelcome conduct.

23. Also, because the FCRA is an anti-discrimination statute, it is not intended to protect against all unpleasantness and rude conduct in the workplace. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). Thus, "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious)" are not actionable under the FCRA. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Furthermore, not all instances of harassment may be considered in the severe or pervasive analysis; "innocuous statements or conduct, or boorish ones that do not relate to the [religion] of the actor or of the offended party . . . are not counted." *Gupta v. Florida Board. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000).

Here, not all instances about which Mr. Sugarman complains were religious in nature. First, a manager telling Mr. Sugarman "watch how I fuck you," while inappropriate workplace conversation, it is not actionable under the FCRA. *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 80 (1998) (not a workplace "civility code"). Similarly, Mr. Sugarman's claim that employees referred to him as "you people," is religion-neutral. Although Mr. Sugarman may have subjectively interpreted the comment to mean "you Jewish people," it is equally susceptible to a non-discriminatory meaning. *Mendoza*, 195 F.3d at 1256 (Edmonson, J., concurring) (baseline of objectively offensive conduct "cannot be met with objectively ambiguous conduct that a suspicious employee subjectively perceives to be improper").

*1) The Conduct Was Not Frequent.*

Viewing Mr. Sugarman's allegations as a whole, the conduct, which was scattered throughout an eleven month period, could not have been so pervasive as to have permeated the workplace with discrimination. *See Tillery v. Atsi, Inc.*, 242 F.Supp.2d 1051 (N.D. Ala. 2003), *affirmed* 97 Fed.Appx. 906 (11th Cir. 2004) (supervisor "repeatedly subjected plaintiff to lectures about her prospects for salvation" told her she "needed to pray," that she was "f-ing up" when she did not attend Mass, and made highly personal inquiries into her private life, including legitimacy of her children and whether previous marriage was terminated by divorce as opposed to annulment sanctioned by Catholic Church). Other than alleging that employees "often referred to Mr. Sugarman as 'you people,'" he alleges three isolated incidents that were far too infrequent to have permeated the workplace with discrimination. *Kantar v. Baldwin Cooke Co.*, 1995 WL 692022 (N.D. Ill. 1995) (holding as isolated and

infrequent, comments more frequent than those alleged here including supervisor calling plaintiff a princess or JAP (Jewish American Princess) and teasing plaintiff about leaving early on Fridays to attend religious services). Furthermore, isolated incidents, unless "extremely serious," are insufficient to state a claim for a hostile work environment. *Faragher*, 524 U.S. at 788; *Shabat v. Blue Cross Blue Shield of Rochester Area*, 925 F.Supp. 977 (W.D.N.Y. 1996) (comments such as supervisor calling yarmulke a "beanie" and asking if plaintiff had a propeller for it; asking "how come you cannot accept Jesus Christ as the messiah, the son of God? After all, he was a Jew;" supervisor approving time off for Yom Kippur "even though there is no such holiday;" and co-worker asking "who did you have to kill" to make matzah cake, found to be isolated and sporadic).

*2) The Conduct Was Not Severe.*

The alleged incidents not only were infrequent, they were not severe. For instance, Mr. Sugarman was told in the presence of other employees that "they were 'not letting Jews in.'" Although offensive, this comment was not sufficiently severe to create a hostile work environment. *See Faragher*, 524 U.S. at 788; *Kaplan v. Banque Nationale de Paris*, 1995 WL 753900 (S.D.N.Y. 1995) (supervisor questioned why plaintiff needed to take off High Holidays in light of fact he was married to Italian, referred to Jewish holidays as "Hebe holidays," said he did not understand why plaintiff needed time off around Christmas and New Years because plaintiff was Jewish, stated "Don't be so Jewish about it" after plaintiff corrected calculation). Likewise, comments regarding Yom Kippur more vicious than those alleged by Mr. Sugarman have been found not severe enough to create a hostile work environment. *Id.* at *4 (calling Yom Kippur a "Hebe holiday"); *Shabat*, 925 F.Supp at 982 (supervisor approved time off for Yom Kippur "even though there is no such holiday"). Similarly, even assuming *arguendo* that when employees "referred to Mr. Sugarman as 'you people,'" they meant "you Jewish people," the comments were not sufficiently severe to create a hostile work environment. *See id.* at 982 (question "who did you have to kill" to make matzah cake "was an allusion to a once-common myth spread by anti-Semites that Jews killed children and used their blood when baking matzah"). Simple teasing is not actionable under the FCRA. *Faragher*, 524 U.S. at 788.

Furthermore, conduct must be far more egregious than the conduct Mr. Sugarman alleges if it is to be

considered sufficiently "severe or pervasive" to create a hostile work environment. *Feingold v. State of New York*, 366 F.3d 138, 145, 150-51 (2d Cir. 2004) (plaintiff singled out "on an 'almost daily' basis on account of his religion," including mocking his name by using other "Jewish sounding" names like "Feinstein, Goldstein, Goldman, Silverman"); *Venters v. City of Delphi*, 123 F.3d 956 (7th Cir. 1997) (supervisor constantly talked to plaintiff about her salvation, commented about her "sinful life and the disgust he felt towards her," stated an "evil spirit" had taken her soul, suggested that suicide would be "preferable to her continuing life of sin," and threatened to fire her "if she did not choose 'God's way' over 'Satan's way'").

Finally, courts have considered conduct far more egregious than that which Mr. Sugarman alleges and rejected claims of religious harassment. *Bender v. Tropic Star Seafood, Inc.*, 2009 WL 903351 *7-8 (N.D. Fla. 2009) (ten instances over eight months in which plaintiff was "ridiculed and teased for being Muslim," including constant invitations to church to "get saved"); *Kantar*, 1995 WL 692022 at *3 (supervisor referred to plaintiff as princess or "JAP" (Jewish American Princess), inquired about cost or price of plaintiff's religious faith, teased plaintiff for leaving early on Fridays to attend religious services).

*3) The Conduct Was Not Threatening or Humiliating and Did Not Interfere with Mr. Sugarman's Job Performance.*

Indeed, Mr. Sugarman does not allege any conduct was physically threatening or humiliating, or that any conduct interfered with his job performance. Rather, he makes conclusory allegations that the "discrimination was sufficiently pervasive and/or severe to alter the terms, conditions, compensation, or privileges of Mr. Sugarman's employment . . . and to limit, segregate or classify Mr. Sugarman which deprived him of employment opportunities and adversely affected his employment status." [Compl. ¶ 22]. This is nothing more than "a formulaic recitation of the elements," inadequate to support Mr. Sugarman's claim. *Twombly*, 550 U.S. at 571.

## II.   CONCLUSION

Accepting the factual allegations in the complaint as true, the Court finds that Mr. Sugarman fails to allege facts sufficient to support his claim that a religiously hostile environment existed at Deutsche Bank. Accordingly, the Court will enter judgment as to Count I of the complaint for the Defendant. Therefore, it is

ORDERED that Defendant's Motion for Partial Judgment on the Pleadings [DE 10] is GRANTED. The

Court will enter a formal judgment for the Defendant as to Count I of the complaint [DE 1] at the conclusion of the case.

DONE AND ORDERED in Miami, Florida, this 27th day of April 2010.

_____
PATRICIA A. SEITZ
UNITED STATES DISTRICT COURT

cc: Magistrate Judge O'Sullivan
    Counsel of Record